COLBERG ET AL. *v*. TRIGO.

APPEAL from the District Court of San Juan, Section 2.

No. 497.—Decided November 10, 1910.

APPEAL—EVIDENCE—CONSIDERATION THEREOF.—Where a preponderance of the evidence tends to establish a point at issue and the trial judge appears to have deemed it to have been of sufficient importance to base his judgment thereon, and his conclusions are correct, the judgment should stand.

CONTRACTS.—Where one of the parties expects to be benefited by a contract, he is bound to abide by the terms thereof in all its particulars.

ID.—RECIPROCAL OBLIGATIONS—CONDITION PRECEDENT.—In reciprocal obligations, the nonfulfilment of a condition precedent by one party disqualifies him from demanding from the other the performance of the latter's obligation.

The facts are stated in the opinion.

*Mr. José G. Torres* for appellants.

*Mr. Antonio Alvarez Nava* and *Mr. José Hernández Usera* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This action was begun in the District Court of San Juan, Second Section, on October 30, 1907, to recover $1,462.05 (one thousand four hundred and sixty-two dollars and five cents), and interest thereon, alleged to be due as rents for certain shares in the salt works near Cabo Rojo, known as

"Candelaria" and "Fraternidad." The property in these salt works appears to be vested in a joint-stock company consisting of thirty-one (31) shares, of which the plaintiffs own four (4), the remaining twenty-seven (27) belonging to other parties. The claim of the plaintiffs is based on a contract of lease dated February 3, 1900, to which the plaintiffs were not parties, but which was made by the majority of the co-owners of the said salt works and which, under the statutes at that time in force, was binding on the minority of the coowners including the plaintiffs. As preliminary matters, the respondents make a motion in their brief to dismiss the appeal and urge a noncompliance with the statutes of procedure in the preparation of the transcript. The appellant also urges upon the attention of the court questions of a similar nature. But in the view we take of the law and the facts of this case it is only necessary to consider the main point on which the judgment of the trial court is based. We therefore pass on at once to the consideration of the fundamental proposition. The facts are alleged by the plaintiffs in their complaint substantially as follows: "The action brought in this case is based on the fact that by deed of February 3, 1900, the majority of the coowners of the salt works, 'Fraternidad' and 'Candelaria' converted into a public instrument a private contract of lease with Francisco Trigo, for the term of four years, to begin on September 1, 1901. By this contract the lessee bound himself to pay $15 on the last day of each month for every share of the 31 shares which made up the capital of the partnership, as well as the mortgage instalments, payable semiannually, that might become due during said lease, of a mortgage on said property held by the Banco Territorial y Agrícola; it being stipulated that if Francisco Trigo failed to pay during two consecutive months the rental agreed upon, and also to pay two of the semiannual mortgage instalments to the Banco Territorial y Agrícola, the contract should be considered as rescinded."

Neither the coowner, Concepción Colberg, nor her husband, Miguel del Toro, agreed to this contract of lease; but they were forced to be bound by it by virtue of section 398 of the Civil Code then in force, which provided that the resolution of the majority of the participants should be binding on all provided said participants represented a majority of the interests which constituted the object of the common ownership, as happens in this case, where Concepción Colberg only owned 4 out of the 31 shares constituting the common ownership.

By another deed of May 18, 1900, Francisco Trigo subleased the 31 shares in said properties, which had been leased to him, to Pedro Fidel Colberg and Dionisio Trigo, jointly and severally, for the same rental of $15 per month and under the same terms and conditions of his lease.

And by a third deed of December 31, 1902, it was set forth that, the lessee and sublessees having failed to comply with clause 4 of the deed of February 3, 1900, going so far as to leave unpaid the instalments due on July 15, 1901, January 15 and July 15, 1902, and owing to the Banco Territorial y Agrícola, the contract was rescinded, the sublessee, Pedro Fidel Colberg, having been required to relinquish the possession of the properties, which he did, since the right to the lease had become extinct by causes derived from the deed constituting said right.

In that same deed it was specified that the parties executing said deed, among whom were Concepción Colberg and her husband, Miguel del Toro, all of them, except Pedro F. Colberg and his wife, reserved to themselves all the rights and actions that they might have on account of any claims existing or that might be prosecuted arising out of transactions carried out between the lessors and lessees of the properties "Fraternidad" and "Candelaria."

And as a consequence of all that and of the fact that the lessors were paid the rental for the months of September and

October, 1901, the plaintiffs claimed of the defendants the rental corresponding to their shares during the 14 months from November 1, 1901, up to December 31, 1902, when the contract was rescinded, plus their *pro rata* share in the amount due to the Banco Territorial y Agrícola amounting to one thousand four hundred and sixty-two dollars and five cents ($1,462.05).

The defenses set up by the defendants in their answer are substantially as follows: The defendants alleged that the plaintiffs were bound to deliver to them 53,000 *fanegas* (Spanish bushels) of salt at the beginning of the contract, and that they did not deliver the same nor the equivalent thereof in cash.

That this circumstance and the bad weather which hindered the production of salt were the cause of the rental not having been paid; that it was so recognized by the majority of the participants by the deed of January 31, 1903, in which deed it was stated that the rescission of the contract being to the advantage of the owners of the said properties, the latter ratified the deed executed on December 31, 1902, and relieved the lessee and sublessees from liability incurred on account of the rental left unpaid and for anything else, and withdrawing any claim on their part against the same.

The defendants also alleged prescription, except in regard to the rental corresponding to the months of October, November and December, 1902; and they prayed that the complaint be dismissed in all its particulars, and, if this was denied, that it be declared that the defendant, Dionisio Trigo, is only bound to pay one hundred dollars ($100) for the rental corresponding to the months of October, November and December, 1902.

On October 30, 1909, after a trial in which both parties participated and presented their pleadings, introduced their evidence, oral and written, and made such arguments as they deemed pertinent, the court found the law and the facts on the

side of the defendants and rendered judgment in their favor.
This judgment was in accordance with a brief opinion by the
district judge in which he says:

"The plaintiffs are shareholders of the salt works of Cabo Rojo,
Candelaria y Fraternidad, which in 1900 were leased to the defend-
ant, Francisco Trigo, and later on subleased to Domingo Trigo and
another.

"The said lease and sublease also took effect on September 1, 1901.
In the contract of lease it was specified that a quantity of fifty-three
thousand *fanegas* (bushels) of salt, should be delivered to the lessee,
upon his taking possession of the properties referred to. As the afore-
said quantity of salt had not been delivered to the defendants they
did not think that it was their duty to comply with the contract.
Now the plaintiffs demand that the monthly rent, specified in the con-
tract of lease, be paid them.

"The nonfulfillment of the contract, on the part of the coowners
of the aforesaid properties, with regard to the delivery of the salt,
having been established, it is the opinion of the court that the de-
fendants were at liberty not to fulfill the contract on their part."

It may be observed that this defense, although set up in the
pleadings, is not given as a reason for rescinding the contract
of lease in the document dated December 31, 1902, nor in the
ratification executed a month later. It is further contended
by the appellant that from the evidence in the case "it is at
least doubtful" that the salt had not been delivered. Though
it may be doubtful, we will consider that a sufficient prepon-
derance of the evidence supports the finding of the trial judge
to that effect.

This defense is made in the answer and the facts on which
it is based being found in favor of the defendant, the trial
judge, if he thought it of sufficient importance, could base his
judgment on this circumstance alone, and if his conclusions are
correct, his judgment should stand. In the original lease noth-
ing is said about the delivery by the lessors to the lessees of
the 53,000 *fanegas* of salt; but reference is made to such *fane-
gas* in a way that indicates the intention of the parties; the

delivery, moreover, is plainly set forth in the sublease, and this suit is brought not only against the original lessee, but against the sublessee as well, so that the plaintiffs claiming the benefit of that contract must be bound by its terms.

Then it is clear that the delivery of this salt may have been very important to the defendants in furnishing a working capital, being valued by the parties at $31,800. Then, if this was a condition precedent, as it appears to have been, the trial judge was right in holding that for want of compliance with it the plaintiffs could not claim any default on the part of the defendants in failing to pay the rents and had no cause of action. As there is no error in the judgment of the court below, it should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justice Wolf concurred.

Justices Figueras and del Toro did not take part in the decision of this case.